IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :

    v.                           : CRIMINAL NO. 1:CR-95-163

ROBERTA RONIQUE BELL,            :
        Defendant


TRANSCRIPT OF PROCEEDINGS

SENTENCING

Before:   Hon. William W. Caldwell, Judge

Date:     September 30, 1996

Place:    Courtroom No. 2
          Federal Building
          Harrisburg, Pa.



COUNSEL PRESENT:

    GORDON A.D. ZUBROD, Assistant U.S. Attorney

        For - Government

    RICHARD K. RENN, Esquire

        For - Defendant


Monica L. Zamiska, RPR
Official Court Reporter

1    MR. ZUBROD:  May it please the Court, we are here in
2    the case of the United States of America v. Roberta Ronique
3    Bell.  Miss Bell was convicted I believe on January 19, 1996
4    of various counts related to the murder of Doreen Proctor.
5    The presentence investigation has been completed, been
6    reviewed by counsel.  I don't believe that there are any
7    outstanding objections at this time.  At this time the United
8    States moves for sentencing.
9        THE COURT:  Okay.  Mr. Renn, are there any
10   objections to the pre-sentence report?
11       MR. RENN:  Well, there are, Your Honor.  There
12   aren't any outstanding -- I don't believe there are any
13   outstanding factual disputes, but we did raise several legal
14   arguments with respect to the pre-sentence report, and I can
15   address those briefly.
16       THE COURT:  All right, let's do that.
17       MR. RENN:  For our purposes there are two main
18   objections which we raised in a correspondence of June 7.
19   First is that the pre-sentence report attempts to assign to
20   the base offense level that which -- that offense level which
21   is consistent with murder in the first degree.  And if the
22   Court has a copy of our letter, we are at the bottom of the
23   page 2, top of page 3 on the objections, the evidence that was
24   established at the trial does not necessarily indicate that it
25   was Roberta Bell's plan to kill Doreen Proctor.  As the Court

well knows, Roberta was involved in very little of the pre-event planning, if you will.  While the government has attempted to prove that she went out of the state to try to bring in out of state witnesses to commit the murder and things of that nature, the government never really established that, in fact the jury acquitted her of the count of traveling or murder for hire, traveling in interstate commerce bringing someone back for purposes of doing that.

None of the government's witnesses indicated that she was around the night that the gun was obtained by Willie and I believe David Tyler and cocked and various individuals were shown how to use it.

And most telling that there were other things going on that Roberta did not know about was the government's list of phone calls made to and from Mary Jane Hodge's home on the night that the incident happened.  You'll recall that various witnesses testified as to maybe one, two or three phone calls, when in fact there were a whole series of phone calls that took place to and from her particular residence.

What the evidence does establish, and again we have to accept as true, the government's evidence as presented in light of the jury's verdict, is that Roberta at best went to try to intimidate or scare Doreen Proctor.  All of the government's witnesses, including the statements made by the witnesses that were most damaging to Roberta at her trial,

1  indicated that while Roberta fired one shot, it was not the
2  shot that killed her, and Willie Tyler in fact fired the shot
3  that killed Doreen Proctor.
4      We believe under all the circumstances that the
5  government at best has proven murder in the second degree, and
6  we believe that that is the offense guideline that should be
7  assigned as the starting point in analyzing anything under the
8  sentencing guidelines and believe that that level would result
9  in a level of 33.
10     Our second issue is the probation department failed
11 to identify a grounds for departure.  We believe that and at
12 this point we have asked the Court to take judicial notice of
13 the pretrial services report that was submitted over a year
14 ago in this particular case, which essentially sets out the
15 same thing that we submitted in our two letters on behalf of
16 Roberta Bell by her employers which she -- by whom she was
17 employed after she was acquitted of the Adams County case.  At
18 that point her life settled down.  She was off of drugs.  She
19 was supporting her two children, working several jobs at that
20 point.  We believe that she made a substantial and significant
21 turn around in her life at that time after her acquittal in
22 Adams County and in fact led a law-abiding life up to the time
23 she was arrested on these charges which was sometime after her
24 release in Adams County.
25     We believe that that factor alone is sufficient to

Case 1:95-cr-00163-SHR   Document 97   Filed 10/29/96   Page 5 of 14

5

1  warrant the Court to depart downward from the sentence which
2  the probation department believes which is appropriate, which
3  is a life sentence, to something less than that. Obviously
4  whatever that is is up to the discretion of the Court, but we
5  believe that that factor alone is not something that was taken
6  into account by the Sentencing Commission and it is something
7  that should be taken into account by this Court.
8      THE COURT: Okay, didn't the evidence establish that
9  Miss Bell drove the victim to the point where she was killed?
10     MR. RENN: If that's believed, yes, it did establish
11 that. However, again whether or not she knew that she was
12 going to be killed at that point is crucial because obviously
13 if she thought -- if she thought she was driving the witness
14 there simply to scare her, to prevent her from testifying the
15 following day, that's one thing, but there is no evidence that
16 Roberta Bell knew that she was driving this witness to her
17 ultimate demise.
18     THE COURT: I didn't review the transcript of the
19 trial, and I don't know whether you have or not. Did Miss
20 Bell testify about the fact that she went to the scene of the
21 killing?
22     MR. RENN: She did not. She denied that, Your
23 Honor.
24     THE COURT: That's what I thought.
25     MR. RENN: That's correct.

THE COURT: She denied being in the residence?

MR. RENN: That's correct.

THE COURT: That was according to my notes.

All right, Mr. Zubrod, what is your response to, first of all, the presentence report does assign an offense level that would be consistent with murder in the first degree, which, as we know in Pennsylvania, would be a killing with malice, intentional killing with malice.

MR. ZUBROD: We point to both the act, the evidence of the act and evidence of the intent. The evidence before the Court is that the victim took a loaded sawed-off shotgun, pointed it at the victim's chest at point blank range and pulled the trigger blowing her breast off. The logical inference, the clear consequences of such an act is death. When she went to the car and removed the shotgun from it, she had an intent to terminate her life. This was a premeditated killing.

The intent goes beyond the actual scene where this woman was murdered. As you recall, earlier in the evening the evidence is that the defendant went to Mary Jane Hodge's apartment, and she stated that she had gotten into the victim's apartment and said I could have killed her then but her daughter was present, and I would have had to have killed the daughter also.

Mary Jane Hodge warned her when she was driving the

Case 1:95-cr-00163-SHR   Document 97   Filed 10/29/96   Page 7 of 14

7

victim to her death, she said make sure she doesn't get near a phone, and the answer was I'm not a fool, she's not going to get near a phone. Don't worry about it.

All of these facts unite to show that there was an intent before the defendant got in the car with the victim that the victim was not going to survive that night and that a main architect of her death was the defendant Ronique Bell.

Secondly, the evidence shows both at a trial and subsequently that Ronique Bell was a chameleon, that she changes faces. That she puts on different faces to suit different needs. This is the same woman who managed to stand out in front of Doreen Proctor's apartment weeping and crying that she wouldn't be able to get home to her children, playing upon her compassion so that she could get into the apartment and ultimately lure the victim to her death.

The fact that she stands before the Court and points to some changed behavior is not worthy of belief in my view.

Secondly, even if that were true, the changed behavior does not mitigate or take away from the seriousness of the offense. This is an offense of a grave nature, and for the Court to say that subsequent changed behavior is grounds for a departure would unnecessarily in an unwarranted way mitigate the seriousness of the offense.

THE COURT: Okay. Well, this is a difficult case, of course, for all concerned. I would like to make notes

about the objections that have been raised. I would like to review my notes for a few minutes. We're going to take a 15 minute recess at this point so I may do so. Please recess.

(A recess began at 11:10 a.m. and the case continued at 11:25 a.m.)

THE COURT: I appreciate, Mr. Renn, the presentation that you have made, and it was, of course, in line with the objections that you had previously communicated to the probation department. And I have had some opportunity prior to this morning to consider those objections, and having heard your presentation and the opposition by Mr. Zubrod, I am at this point prepared to render a decision on those objections.

Insofar as a departure under 5K2.0 is concerned for the alleged mitigating role in the offense here, I find no authority for the proposition that a person who has been convicted of killing another person can by subsequent conduct change the nature of the act committed. So in the first instance I think it's necessary for the Court to determine if this was a premeditated killing under 2A1.1 of the guidelines. If it was, then I think the penalties for that offense must be imposed. If the killing did not involve premeditation, then the guideline for second-degree murder under 2A1.2 applies. However, in this event I also conclude that there is no recognizable basis in a case such as this to depart downward from the guideline range. I don't think that subsequent

conduct can change that in a case involving murder.

So the first thing to be determined I think is whether the government has shown that this was a premeditated killing or not, and I want to emphasize that we are dealing under the guidelines with a preponderance of evidence test in this case. It does not require proof beyond a reasonable doubt such as the conviction did.

I think, of course, the defendant's state of mind as revealed by the evidence is what we have to look at along with the degree of risk to the victim that was inherent in the conduct which -- in which she engaged as well as the nature of the underlying offense conduct.

What I have done is reviewed the evidence in this case to determine whether this was a premeditated killing; that is, whether the defendant intended and set out to cause the death of Doreen Proctor. First of all, we begin with the fact that Doreen Proctor had testified at a preliminary hearing against the defendant's boyfriend at that time, David Tyler, and, of course, she was scheduled to testify at his trial later in the day on the day she died. The evidence also included testimony by "Butch" Evans that about two weeks before this killing the defendant told him that someone was coming from Illinois quote, "to take car of the bitch in Carlisle" unquote. The weekend before the killing, according to a witness by the name of Romero, she was asked to get a gun

by the defendant to quote, "take care of another woman". The defendant was seen with the Tylers and the Kings on the same night that Mary Jane Hodge heard them indicating that the quote, "bitch has to die tonight," I believe was the testimony.

As Mr. Zubrod pointed out, the defendant also told Mary Jane Hodge she could have killed the victim earlier in the day but that her daughter was present in the apartment and that she would have had to kill her as well.

Miss Hodge also testified that the defendant said she lured Proctor from the apartment with a promise of cocaine. And Antonia Hamilla, I believe it was, saw the defendant and the victim in front of that apartment about 1:50 a.m. on the morning of the killing.

Hodge further testified about the phone call that she had with Miss Bell, that the victim was in the car and that she should not let her get to a telephone.

After the state trial in Adams County there was testimony from various witnesses in this trial that -- who testified that the defendant told them about her role in this offense. Paula Thomas said that she said that the defendant said I shot her, then Willie shot her. Kim Staub I think testified that the defendant said, yes, I killed her. Laura Mae Barrett testified that the defendant told her I shot her but Willie killed her. Robin Romero testified that -- to the

same thing basically, that the defendant had shot her and that Willie Tyler shot her in the head. And Yvonne Earhart, I believe it was, testified that the defendant said we killed a drug informant in Carlisle who was going to testify against my boyfriend. Those statements were all made at the point at which the defendant had been acquitted of this offense in Adams County and I think felt that she was home free.

It is my conclusion that the defendant was an active participant in the killing of Doreen Proctor and intentionally fired a sawed-off shotgun at her body at point blank range intending to kill her. This can only mean one thing, and that is that it was the clear intent of both Bell and Tyler to kill Doreen Proctor.

The fact that Miss Bell -- that Miss Proctor rather or Miss -- yes, Doreen Proctor. The fact that Miss Proctor did not die directly or at the moment from the defendant's attempt to kill her does not in any way mitigate her role with Willie Tyler in causing the victim's death. So that the penalty for first-degree murder in a killing with premeditation in my view is what we are dealing with here.

Mr. Renn, do you have anything further to say on behalf of your client before sentence is imposed?

MR. RENN: No, Your Honor.

THE COURT: Miss Bell, you have an opportunity, if you wish, to speak on any matters that you wish to, including

the subject of sentencing. Do you wish to speak?

THE DEFENDANT: No, sir.

THE COURT: Mr. Zubrod, do you have anything you wish to say?

MR. ZUBROD: Very briefly, Your Honor. As the facts both at the trial and during the presentence investigation brought out, as I have previously mentioned, Miss Bell is a woman of many faces. It would be fair to call her a chameleon. She has portrayed herself to be a victim of abuse, a devoted mother, a hard working employee. At the same time the evidence has shown her to be a cold-blooded killer. She went around bragging about how she had blown off the victim's chest. You heard the testimony of Dr. Mihalakis who said there is only one purpose for the wounds which were inflicted prior to her death, that was the infliction of excruciating pain. This victim was tortured to death, and this woman was a part of it and a willingly participated in it.

She is a cynic manipulator of people's emotions, not just the victim's, but let's talk about the victim. She was weeping, playing upon her sense of -- the victim's sense of compassion to get inside the house where she said I could have killed her right then. She talked about the need to get a ride home to her children and manipulated the very sense of compassion of her victim to place her in a position where she could kill her.

1   The evidence in this case is absolutely unequivocal
2   that Ronique Bell was a key player in the events leading up to
3   the planning of Doreen Proctor's murder.  She was a willing
4   participant.  She bragged to individuals.  She orchestrated
5   the obstruction of justice which took place after the murder
6   of Doreen Proctor.  As a result, a young woman is dead.  A
7   child is without a mother, and that child, by the way, is
8   mentally retarded.  A witness was destroyed and murdered.
9   This was a cold premeditated and vicious act.  It calls for
10  the most serious sanction which can be imposed by law, and we
11  ask for the maximum sentence in this case.
12          THE COURT:  Thank you.
13          Pursuant to the Sentencing Reform Act of 1984 it is
14  the judgment of the Court that the defendant Roberta Ronique
15  Bell is hereby committed to the custody of the Bureau of
16  Prisons to be imprisoned for life.  This term consists of
17  terms of 5 years on count 1, a term of life on count 3 and a
18  term of 10 years on count 4.  These terms to be served
19  concurrently.  It is further ordered on count 5 that the
20  defendant serve a term of 10 years consecutive to the term
21  imposed on count 3.
22          The Court finds that the defendant will have the
23  ability to pay a fine during the period of incarceration.
24  Accordingly we order that she pay the United States the sum of
25  $10,200, consisting of a fine of $10,000 on count 1 and

special assessments of $50 on each count. Said sums shall be paid through the Clerk of Court here in Harrisburg.

Miss Bell, I must advise you of your right to appeal your sentence to the United States Court of Appeals. If you are unable to pay the costs of an appeal, then you may apply for leave to appeal in forma pauperis, and if approved, counsel will be appointed for you, and you will not be required to pay any costs. Any appeal must be filed within 10 days of today's date. Miss Bell, do you understand that right of appeal?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I think that's all. Thank you. We'll adjourn at this time.

(The proceedings concluded.)

I hereby certify that the proceedings and evidence of the court are contained fully and accurately in the notes taken by me on the sentencing of the within cause, and that this is a correct transcript of the same.

*Monica L. Zamusha*
Official Court Reporter